# IN THE UNITED STATES DISTRICT COURT WESTERN DISTRICT OF OKLAHOMA

**ANTHONY CASTILLO SANCHEZ,**          **Case No. 10CV1171**
                                                                  **Judge Heaton**

                **Petitioner,**

**vs.**

                                    **CAPITAL CASE**
**CHRISTIE QUICK, WARDEN FOR**          **EXECUTION SCHEDULED**

                                       **SEPTEMBER 21, 2023**

                **Respondent,**

---

## MOTION FOR STAY OF EXECUTION

---

## INTRODUCTION

Anthony Castillo Sanchez respectfully requests a stay of his September 21, 2023, execution pending Mr. Sanchez's new counsel receiving and reviewing his files to determine the appropriate issues to raise on behalf of Mr. Sanchez. As discussed below, granting Mr. Sanchez a stay poses minimal harm to the Respondent and none to the public.  The words of another court faced with a looming execution date and important unresolved issues are on point here: "[N]o significant harm to the public interest could arise from the proper, informed, deliberate adjudication" of Mr. Sanchez's claims. *See Harris v.*

1

*Johnson*, 323 F. Supp. 2d 797, 810 (S.D. Tex. 2004).  Considering the looming, irrevocable harm to Mr. Sanchez that would result from his unjust execution and for the additional reasons discussed below, the issuance of a stay of execution is warranted.

## ARGUMENT

## I.    MR. SANCHEZ IS ENTITLED TO A STAY OF EXECUTION.

The standards governing preliminary injunctions apply to execution stays in habeas proceedings.  *See Williams v. Chrans*, 50 F.3d 1358, 1360 (7th Cir. 1995).  "A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest."  *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008).  Further, the court must consider "the extent to which the inmate has delayed unnecessarily in bringing the claim."  *Nelson v. Campbell*, 541 U.S. 637, 649-50 (2004).  In death penalty cases, a stay is warranted upon "a showing of a significant possibility of success on the merits."  *Hill v. McDonough*, 547 U.S. 573, 584 (2006).

### A.    Mr. Sanchez Has Shown a Significant Possibility of Success on the Merits of His Claims.

In this case, Petitioner counsels file a motion to determine what should be

done with the files in this matter. *R.80 Motion of appointed attorneys to determine disposition of files and brief in support.* The court did not dispose of this motion until August 7, 2023. In that order the court determined that counsel could keep the files from their client. *R. 89,Order.* The basis of this motion is that there is confidential information in the boxes that should be kept from the Petitioner. Petitioner has new counsel who does not have access to these documents. Investigator David Ballard had sought to take possession of these boxes last spring and when he appeared at the offices of the attorneys was told he could not have them. The court then orders that the lawyers have no obligation to turn over the Petitioners file to anyone. This includes current counsel, working pro bono for Petitioner.

The Ethics Opinion 295 from the State Bar of Oklahoma states:

> The ethical principles involved are simple. The client is entitled to receive what he has paid for and to the return of what he has delivered to the lawyer. Beyond that, the conscientious lawyer should not withhold from the client any item which it could reasonably be anticipated to be useful to the client.

*Oklahoma Ethics Bar Opinion Number 295 citing Opinion 1327*

Neither counsel nor Petitioner can say what can be useful and what cannot be useful and what is reasonable and what is not. The spirit of this opinion and the rule is that all these files need to be turned over to the Petitioner's counsel.

The Tenth Circuit has found the former counsel has no property interest in his clients' files, as they belong to his clients alone. *In Re Grand Jury Proceedings, 727*

*F.2d 941, 944 (10th Cir.), cert. denied, 469 U.S. 819 (1984) ("Any ownership rights which inure in the file belong to the client who has presumably paid for the professional services and preparations made by the attorney."). See also client files do not belong to the clients' attorneys. They belong to the clients themselves. See Frenkel v. Frenkel, 252 N.J. Super. 214, 599 A.2d 595, 597-99 (N.J. Super. Ct. App. Div. 1991) (holding that trial court was correct to order former counsel to turn over photocopies of former client's file to new counsel despite lien on former client and consistently referring to the files throughout the opinion as the client's property); see also Matter of Breen, 113 N.J. 522, 552 A.2d 105, 111-14, 118-19 (N.J. 1989) (finding a pattern of neglect by attorney and subsequently disbarring him, in part, because he repeatedly failed or refused to turn files back over to clients). Cited by Lento v. Altman, 2023 U.S. Dist. LEXIS 111221. Also, In Los Angeles County Bar ("LACB") Formal Opinion Number 330 (1972), the Ethics Committee stated, "[i]n the Committee's opinion, 'work product' for which the client may be billed, belongs to the client." See also LACB Formal Opinion No. 362 (1976) (affirming finding of Opinion 362). The Ethics Committee also stated, "this Committee believes that, in most cases, virtually everything in a client's file is the property of the client, because it either has been copied at client expense, or the time utilized to create it has been at client expense. LACB Formal Opinion No. 405 (1982) Cited by White v. Experian Info. Solutions, Inc., 2009 U.S. Dist. LEXIS 117979; also, the files obtained are the*

4

*property of the former client. Cal. Prof. Conduct 3-700(D)(1); Rose v. State Bar, 49*

*Cal. 3d 646, 655, 262 Cal. Rptr. 702, 779 P.2d 761 (1989). Cited by Albert v. State*

*Bar of Cal., 2015 U.S. Dist. LEXIS 189124; A formal ethics opinion similarly states*

*that "the client's file is the client's property and SCR 20:1.16(d) requires a lawyer to*

*surrender the file upon termination of representation." Wis. Formal Ethics Op. EF-*

*16-03: Surrender the Client File upon Termination of Representation (2016) cited by*

*Chagoya v. United States, 2022 U.S. Dist. LEXIS 217319; The client's property*

*includes the client's papers and other documents in the client's file. Tex. Ethics Op.*

*No. 570, 2006 WL 2038682, *1 (Tex. Prof. Eth. Comm. May 2006) cited by Hervis v.*

*United States, 2009 U.S. Dist. LEXIS 130247; "In North Carolina, anything in a*

*client's file, which is in the hands of the client's attorney, belongs to the client, with*

*the exception only of the attorney's notes or work product." Womack Newspapers,*

*Inc. v. Town of Kitty Hawk, 181 N.C. App. 1, 639 S.E.2d 96, 104 (N.C. Ct. App.*

*2007); see also, N.C. State Bar Revised Rules of Professional Conduct, Rule 1.16,*

*Comment 10 (2006) cited by Kirkhart v. DaimlerChrysler Corp., 2008 U.S. Dist.*

*LEXIS 143515; he Virginia State Bar Standing Committee on Legal Ethics has since*

*[**16]  clarified that "the ethical mandate [to safeguard and return client property]*

*virtually displaces the common law retaining lien," Va. Standing Comm. on Legal*

*Ethics, Op. 1690 (1997) ("Holding a former client's files hostage does not comport*

*with a lawyer's post-representation duty to take reasonable steps for the continued*

*protection of the client's interests"); Recovery Ltd. P'ship v. Wrecked & Abandoned*

*Vessel S.S. Cent. Am., 790 F.3d 522 ;Although Ohio adopted the Model Rules of*

*Professional Conduct, it modified them by deleting language recognizing a retaining*

*lien -- specifically, language authorizing a lawyer to "retain papers relating to the*

*client to the extent permitted by other law," Model Rules of Prof'l Conduct R. 1.16(d)*

*[**17]  -- and substituting for that language a provision that "[c]lient papers and*

*property shall be promptly delivered to the client" upon termination of a*

*representation, Ohio Rules of Prof'l Conduct R. 1.16(d); see also Reid, Johnson,*

*Downes, Andrachik & Webster v. Lansberry, 68 Ohio St. 3d 570, 1994 Ohio 512, 629*

*N.E.2d 431, 435 (Ohio 1994) ("[A]n attorney who is discharged must yield the case*

*file") Id. ; "We therefore believe that once a client pays for the creation of a legal*

*document, and it is placed in the client's file, it is the client, rather than the attorney*

*who holds a proprietary interest in that document. When a client requests that its*

*property held by an attorney be turned over, under Rule 1.15(b) the attorney must*

*comply." Cited by Talley v. Dist. Atty. of Allegheny Cnty., 2022 U.S. Dist. LEXIS*

*205475; the provision that all fees, costs, and expenses must be paid before the*

*attorneys will release the client's file may not comply with Missouri Rule of*

*Professional Conduct 4-1.16. [**6]  See Mo. Bar Formal Op. No. 115, Attorney May*

*Not Withhold Property Belonging to His Client to Enforce Payment of Fees or*

*Expenses (Mar. 4, 1988), https://www.courts.mo.gov/file.jsp?id=44620 (noting the*

*client's file belongs to the client "from cover to cover" and that an attorney may not*

*withhold a client's file to enforce the payment of fees or expenses) cited by Clark v.*

*GM, LLC, 161 F. Supp. 3d 752; see disciplining attorneys for failing to return a*

*client's file where no valid attorney's lien existed. See, e.g., People v. Kuntz, 908 P.2d*

*1110 (Colo. 1996); People v. Jamrozek, 914 P.2d 350 (Colo. 1996); People v. Sigley,*

*917 P.2d 1253 (Colo. 1996); People v. Crews, 901 P.2d 472 (Colo. 1995); and*

*People v. Tucker, 904 P.2d 1321 (Colo. 1995); See, e.g.,); In the Matter of*

*Kaleidoscope, Inc., 15 B.R. 232 (Bkrtcy. D. Ga. 1981) (attorney is agent of client,*

*may not refuse to turn over any portion of client file, and may not assert work-*

*product privilege against client), modified on other grounds, 25 B.R. 729 (D. Ga.*

*1982) (reversing order and holding that the bankruptcy court should have abstained*

*from determining questions relating to property interests in client files). Accord*

*Clark v. Milam, 847 F. Supp. 424, 426 (D. W.Va. 1994); Gottlieb v. Wiles, 143*

*F.R.D. 241, 247 (D. Colo. 1992); Martin v. Valley Nat. Bank of Arizona, 140 F.R.D.*

*291 (S.D.N.Y. 1991); and Resolution Trust Corp. v. H---, P.C., 128 F.R.D. 647 (N.D.*

*Tex. 1989).*

Under Oklahoma law and elsewhere a file cannot be kept from the client. It is

entirely the client's property. In this case, both counsels were appointed and have

been provided with bills to the District Court for payment. They have no valid claim

for a lien to keep the file. They cite confidentiality, not for their client, but for trial

witnesses and others. It is unclear why counsel is raising arguments for others, not their client to keep his file from him and his counsel. They would not be giving the file and this information to Petitioner who is currently on death watch. They would be providing it to his counsel.

This court has found that no further claims exist. Respectfully, current counsel does not know that until he or someone in his employ goes through the boxes, some of which are still sealed, to determine what exists. These sealed boxes could contain information leading to a claim that provides relief for the Petitioner.

Clemency[1] or post-conviction Counsel under the standards provided by the ABA Guidelines must investigate claims. *See ABA guidelines for the Appointment and Performance of Defense Counsel in Death Penalty Cases, 2003, Rule 10.15.1; Rule 10.15.2.* This cannot be done without the entire file, sealed or unsealed. In a capital case, on the eve of execution, Petitioner's prior counsel was not concerned with his rights or possible further claims, but the rights of witnesses and participants in the trial.

The issue becomes if a stay is not granted, and the boxes turned over that leaves no time to determine if claims exist. There is not time to determine further investigation.

---

[1] Counsel is aware Petitioner has waived his clemency proceedings, but the duty to determine claims and options for success still exists.

**B.      Mr. Sanchez Will Suffer Irreparable Harm.**

The irreparable harm to Mr. Sanchez is clear: Absent a stay, he could be executed on September 21, 2023, before he can fully research and litigate remaining claims. *See Williams v. Chrans*, 50 F.3d 1358, 1360 (7th Cir. 1995) (holding that "irreparable harm is taken as established in a capital case" because "[t]here can be no doubt that a defendant facing the death penalty at the hands of the [Respondent] faces irreparable injury").

This is a matter of fairness for the Petitioner. There are between thirty and fifty boxes, some of which were sealed and never unsealed, in the possession of prior counsel. Counsel raises confidentiality concerns about witnesses and others not their former client. They tell the court to trust them that there are no further claims and that the boxes contain no information that would be helpful to the Petitioner. Respectfully, this is not their decision to make. They no longer represent the client and have no interest, financially or otherwise, in the file.

Undersigned counsel attempted to enter the case in May of this year. Prior counsel fought this attempt. They then file a motion to withdraw shortly before the execution. Leaving Petitioner without his file or any way to present a way to save his life.

**C.      The Balance of Harms Weighs in Mr. Sanchez's Favor.**

The Respondent's interest in conducting the execution of Mr. Sanchez on

September 21, 2023, before he has a reliable opportunity for judicial review of remaining claims, does not constitute substantial harm to the Respondent.

Mr. Sanchez has diligently pursued relief for the alleged Constitutional violations every step of the way in the District Court for the Western District of Oklahoma, in the Tenth Circuit, and in the United States Supreme Court, only to be stymied by his own counsel when they refused to provide Mr. Sanchez's own file to him. What is more, any delays in resolving this litigation fall solely on that same counsel when they failed to visit or communicate with him for years.

Absent a stay, Mr. Sanchez could be executed even though there is a significant chance his death sentences were obtained in violation of his Constitutional rights. When considered in the full context of Mr. Sanchez's blindness approaching the end of his litigation, the harm to Mr. Sanchez far outweighs the harm to the Respondent.

**D.      The Public Interest Weighs in Favor of a Stay.**

There is no public interest in an unjust execution. Moreover, a stay would vindicate the public's interest in making sure an execution is just and only following full and fair judicial review. Mr. Sanchez seeks a meaningful opportunity to have this Court consider the merits of his claims, and a delay in the execution for this purpose would not disserve the public interest. *See Cooey v. Taft*, 430 F. Supp. 2d 702, 708 (S.D. Ohio 2006) ("[T]he public interest only is served by enforcing

constitutional rights and by the prompt and accurate resolution of disputes concerning those constitutional rights. By comparison, the public interest has never been and could never be served by rushing to judgment at the expense of a condemned inmate's constitutional rights"). Here, the public interest would not be served by rushing to judgment where such extraordinary circumstances and equities exist.

### E.   Mr. Sanchez did not Unnecessarily Delay this Litigation.

The two main impediments to Mr. Sanchez being able to litigate anything are his two former court-appointed attorneys. First, they did not visit or communicate with Mr. Sanchez for years. This abandonment prevented Mr. Sanchez from participating in his defense and reviewing his files. Additionally, counsel refused and, indeed, continue to refuse to provide Mr. Sanchez with his file. Attorneys Barrett and Coyne stayed on Mr. Sanchez's case until July 7, 2023. After inquiries, this Court issued an Order on August 7, 2023, ruling that court-appointed counsel should not provide Mr. Sanchez's files to him – not even his trial transcripts that counsel offered to provide. Later, on August 22, 2023, undersigned counsel entered his appearance. Following the filing of a motion to expedite was filed. Twenty days later this motion was filed.

Under these circumstances and this timeline, Mr. Sanchez did not unnecessarily delay this litigation.

## **CONCLUSION**

Mr. Sanchez has demonstrated that all the relevant factors weigh heavily in favor of this Court issuing a stay of execution so that Mr. Sanchez may receive his files and have his attorneys review those files to litigate remaining issues.

Respectfully submitted,

**/s/ Eric J. Allen**
Eric J. Allen
4200 Regent Street
Suite 200
Columbus, Ohio 43219
(614) 443-4840
Eric@EAllenLaw.com

## **CERTIFICATE OF CONFERENCE**

On September 11, 2023, the undersigned conferred with Jennifer Crabb , counsel for the Warden, who indicated that the Appellee opposes the motion.

*/s/ Eric Allen*
Eric Allen

## <u>CERTIFICATE OF SERVICE</u>

I certify that on September 12, 2023, I filed a true and correct copy of this document electronically with the Clerk of the Court for the Western District of Oklahoma , using the electronic case filing system. A "Notice of Electronic Filing" was sent to all counsel of record.

_/s/ Eric Allen_____
Eric Allen