No. _____

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE TENTH CIRCUIT

_____

IN RE ANTHONY CASTILLO SANCHEZ,

Movant.

_____

## MOTION FOR AN ORDER AUTHORIZING
## THE FILING AND CONSIDERATION OF
## FIRST SUBSEQUENT PETITION FOR A WRIT
## OF HABEAS CORPUS

_____

**This is a DEATH PENALTY CASE**

**Mr. Sanchez has an execution date on September 21, 2023**

__/s/ Eric Allen__
The Law Office of Eric J Allen, LTD
4200 Regent, Suite 200
Columbus, Oh 43219
Ph:  614 443 4840

## I.      Introduction[1]

Movant, Anthony Castillo Sanchez, moves, under 28 U.S.C. § 2244(b)(3)(C), for an order authorizing the filing and consideration of a first subsequent petition for a writ of habeas corpus, which is attached at Appendix 1. Mr. Sanchez's motion is grounded on the Fourteenth Amendment's Due Process Clause and the Eighth Amendment's Cruel-and-Unusual-Punishment Clause.

This case is an actual innocence one where Mr. Sanchez's father, Glen Sanchez, allowed Mr. Sanchez to be convicted and sentenced to death for a crime Glen[2] committed. Here, Mr. Sanchez was convicted of sodomizing, raping, and killing a local college student, Julie Buskin. During the pendency of the review of Mr. Sanchez's conviction and sentence, Glen confessed to the murder <u>multiple</u> times. These confessions were made to his girlfriend, Charlotte Beattie, in the context of threatening her. Glen's confessions carry more weight because they were made in the throes of blinding rage.  He later committed suicide, further demonstrating consciousness of guilt.  And Mr. Sanchez has never confessed to any interactions with the victim Jewell "Juli" Buskin, much less sodomizing, raping, and killing her.

---

[1] Mr. Sanchez and his counsel do not have access to Mr. Sanchez's files until very recently. They still have not taken possession of the more than 40 boxes yet. Counsel apologizes for any mistakes resulting from this fact.

[2] This motion will refer to Glen Sanchez as "Glen" because he shares the same last name as Movant.

## II.     Jurisdiction

This Court has subject matter jurisdiction of this case under 28 U.S.C. § 2254(a). Mr. Sanchez is under a judgment and sentence of death entered in Cleveland County, Oklahoma.

## III.     Statute of Limitations

Mr. Sanchez's habeas claim meets 28 U.S.C. § 2244's statute of limitations because he could not have discovered the factual basis until November 2022. Ms. Beattie swore that she would not have shared Glen's confessions because they were part of threats toward her. Glen made his confessions when threatening to do the same to Ms. Beattie. Ms. Beattie literally feared for her life if she shared the confessions.

28 U.S.C. § 2244 allows habeas petitioners to file later than its one-year deadline under limited circumstances. One of those circumstances is when "the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence." 28 U.S.C. § 2244(d)(1)(D). In that circumstance, the one-year deadline starts when due diligence could have uncovered the new facts. *Ibid*.

Here, Ms. Beattie heard Glen's confessions in the context of threatening her life. Ms. Beattie intended to carry those confessions with her to her grave. But then

Glen committed suicide. Ms. Beattie informed Mr. Sanchez's spiritual advisor of Glen's confessions in November 2022. In December 2022, an investigator working for that spiritual advisor spoke with Ms. Beattie and captured Glen's confessions. This timeline places Mr. Sanchez firmly within the appliable statutory timeline. With due diligence, Mr. Sanchez could have discovered this new evidence in November 2022, giving him until November 2023 to file in this Court even without the statutory tolling while litigating state habeas corpus.

Accordingly, Mr. Sanchez's Petition meets 28 U.S.C. § 2244's statute of limitations.

## IV.   2244 Standard

2244 states that a claim cannot be sustained unless,

(i) the factual predicate for the claim could not have been discovered previously through the exercise of due diligence; and
(ii) the facts underlying the claim, if proven and viewed in light of the evidence as a whole, would be sufficient to establish by clear and convincing evidence that, but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense

*28 U.S.C.A 2244 (b)*

The following definition of what constitutes "clear and convincing evidence" is found in the Modern Federal Jury Instructions:

Clear and convincing evidence leaves no substantial doubt in your mind. It is proof that establishes in your mind, not only [that] the proposition at issue is probable, but also that it is highly probable. It is enough if the party with the burden of proof establishes his claim beyond any "substantial doubt"; he does not have to dispel every "reasonable doubt."

4 L. Sand, *et. al., Modern Federal Jury Instructions* P73.01 at p. 73-16 (1997).

The "clear and convincing" standard of proof is an intermediate standard between the "preponderance of the evidence" standard used in most civil cases, and the "beyond a reasonable doubt" standard used in criminal matters. *Addington v. Texas, 441 U.S. 418, 423-24, 99 S. Ct. 1804, 1808, 60 L. Ed. 2d 323, 329 (1979).*

Mr. Sanchez need only make a prima facie showing of the statutory requirements. *§ 2244(b)(3)(C).* This court does not "engage in a preliminary merits assessment"; rather, the inquiry is "solely on the conditions specified in § 2244(b) that justify raising a new habeas claim." *Ochoa v. Sirmons, 485 F.3d 538, 541 (10th Cir. 2007).* A prima facie showing has been defined as a "sufficient showing of possible merit to warrant a fuller exploration by the district court." *Id. at 545 (quotation omitted) (discussing Bennett v. United States, 119 F.3d 468, 469 (7th Cir. 1997)).*

### V.   Factual History

On December 20, 1996, the body of Ms. Busken was found near Lake Stanley Draper in Cleveland County, Oklahoma. (Tr. 2053-65) There was single gunshot wound to the back of her head. (Tr. 2190) For several years, the offense was considered unsolved by authorities. On July 26, 2004, an Oklahoma State Bureau of Investigation criminalist documented a cold hit, connecting a person in

the Combined DNA Index System database with the Busken homicide. That

person was identified as Anthony Sanchez. (Tr. 2291-2304)

Apparently, Mr. Sanchez had not been a suspect in the Busken murder

during the seven years and seven months preceding the cold hit. Further, there was

no evidence that Mr. Sanchez and Ms. Busken had known each other or had even

known of one another. Nevertheless, on the strength of the DNA evidence, law

enforcement arrested Mr. Sanchez and charged him with Capital Murder, Rape,

and Forcible Sodomy.

Mr. Sanchez was convicted of all three counts and sentenced to death on

June 6, 2006, in Cleveland County District Court (Oklahoma). Mr. Sanchez sought

direct review of his convictions and sentences to the Oklahoma Court of Criminal

Appeals in 2008 and 2009. He filed three state-habeas applications before filing a

fourth at the end of last year. That fourth, PCD 2023 95, is the basis of this Motion

and associated Petition for a Writ of Habeas Corpus.

Aside from one round of federal habeas following the first state-habeas

litigation, this path represents Mr. Sanchez's litigation.

## VI.   Argument

Mr. Sanchez did not rape, sodomize, or murder Ms. Buskin. Instead, his

father, Glen, committed the crime.

In circumstances like these, prisoners must be released if they can prove that "new facts raised sufficient doubt about [the prisoner's] guilt to undermine confidence in the result of the trial . . . ." *Schlup v. Delo*, 513 U.S. 298, 317 (1995). In other words, a prisoner "does not meet the threshold requirement unless he persuades the [] court that, in light of the new evidence, no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt." *McQuiggin v. Perkins, 569 U.S. 383, 386 (2013) (quoting Schlup v. Delo, 513 U.S. 298, 329 (1995)).*

Affirmative evidence shows Glen Sanchez and not Mr. Sanchez committed the rape and murder. First, eyewitnesses developed a composite sketch of the perpetrator shortly after the murder. That sketch does not look youthful like Mr. Sanchez, who was merely 18-years old at the time of the murder. Furthermore, the sketches look incredibly like Glen Sanchez. The inescapable conclusion is that Glen Sanchez was the murderer. Because these witnesses identified Glen Sanchez as the perpetrator, Mr. Sanchez could not have been the murderer, easily establishing *Sawyer* standard. And even if this Court does not determine it does so alone, the evidence establishes the standard when viewed cumulatively.

Furthermore, Glen Sanchez's long-time live-in girlfriend, Charlotte Beattie, lived in terror of Glen. He beat and tortured her. Often, when Glen mistreated Ms. Beattie, he would threaten her to ensure her silence. Those threats consisted of

telling her that he would kill and rape her like he did to the victim, Ms. Jewell Buskin. These confessions are simply overwhelming evidence of actual innocence. Standing alone, no reasonable juror would convict Mr. Sanchez knowing that his father confessed to the murder. And even if this Court determines this evidence is insufficient alone, it certainly satisfies the *Sawyer* standard when viewed cumulatively with the other evidence in this Application.

Not only does Mr. Sanchez present overwhelming evidence that he is an innocent man, but the State also provided many holes in its case, showing that it got the wrong man. First, law enforcement collected 49 unknown fingerprints from Ms. Buskin's vehicle. This vehicle was the one in which the perpetrator transported Ms. Buskin to the murder scene. Given their placement, the inescapable conclusion is that the prints belonged to the perpetrator. And Mr. Sanchez's fingerprints did not match any of the prints – absolutely none. Second, law enforcement collected numerous hairs from incriminating places. Mr. Sanchez's hair did not match any of these hairs. Finally, law enforcement did not compare Glen Sanchez's fingerprints or hair to these critical pieces of evidence.

The DNA samples that purportedly match Mr. Sanchez do not overcome the evidence here. DNA is just another form of evidence. It is not infallible; it is not insurmountable. *United States v. Bonner*, 648 F.3d 209, 212 (4th Cir. 2011). *See*

*O'Laughlin v. O'Brien,* 568 F.3d 287, 294-95 (1st Cir. 2009) (connection between defendant and item found at crime scene not sufficient to establish guilt alone).

The balance of the evidence weighs heavily in Mr. Sanchez's favor. As discussed above, the State's case against him was skimpy. The evidence not presented spoke volumes. The only persuasive evidence was a DNA match. The voluminous evidence supporting Mr. Sanchez's position greatly outweighs the DNA in this case.

The physical evidence that is lacking supports the claim that the DNA means that Mr. Sanchez was the murderer.  First, there are absolutely no fingerprints that match Mr. Sanchez in the car or on anything found in the car.  It seems unlikely that Mr. Sanchez kidnapped the victim, drove her to this secluded area, killed her, got back in the car, and left no fingerprints.  Second, there is hair evidence found at the crime scene that does not match Mr. Sanchez.  Third, the eyewitness does not describe Mr. Sanchez.  The state may argue the fallibility of such identification, but this eyewitness saw what he saw. Fourth, Glenn Sanchez confessed to killing the victim in this case.   A jury can look at the evidence and acquit Mr. Sanchez.

The evidence that was found since the trial and since the end of the habeas proceedings require that this court grant this application.  Mr. Sanchez is innocent of the charges against him and innocent of the crimes of capital murder.  If the

courts and political figures in Oklahoma can step in for Glossip and Jones, they

certainly can step in for Mr. Sanchez.

## VII.   CONCLUSION

Movant requests that this court grant the request to motion to allow the

successor to proceed under 28 U.S.C.A 2244.  Movant has made the requisite

showing that no jury would find him guilty of the underlying client.  His father had

come to the Oklahoma State Penitentiary to visit him and said goodbye, knowing

he had committed this murder.  He confessed to others he committed this murder.

He committed suicide because of this murder.


Respectfully submitted,


__/s/ Eric Allen__
Eric Allen
The Law of Eric Allen, LTD
4200 Regent, Suite 200
Columbus, Oh 43219
Ph:  614 443 4840

## CERTIFICATE OF DIGITAL SUBMISSION

I hereby certify that with respect to this Application:

(1) all required privacy redactions have been made pursuant to 10th Cir. R. 25.5.

(2) if required to file additional hardcopies, that this submission is an exact copy of those documents; and

(3) this digital submission has been scanned for viruses with the most recent version of _____, Version _____, and according to the program, this Application is free of viruses.

_\_\_/s/ Eric Allen\_\__
Eric Allen

## CERTIFICATE OF SERVICE

I certify that on September 17, 2023, I electronically filed the foregoing

motion with the Clerk of Court for the U.S. Court of Appeals for the Tenth Circuit

through the appellate CM/ECF system. I certify that, to my knowledge, all

participants in the case are registered CM/ECF users and that service will be

accomplished by the appellate CM/ECF system.

__*/s/ Eric Allen*__

## IN THE UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| **ANTHONY CASTILLO SANCHEZ,** | **Case No.:** |
| **Oklahoma State Penitentiary**<br>**1301 N. West St**<br>**McAlister, OK 74501** | **District Court Judge Heaton**<br>**District Court Magistrate** |
| **Petitioner,** | **EVIDENTIARY HEARING** |
| | **REQUESTED** |
| **VS.** | **DISCOVERY REQUESTED** |
| **CHRISTIE QUICK, WARDEN,**<br>**Oklahoma State Penitentiary**<br>**1301 N. West St.**<br>**McAlister, OK 74501** | |
| **Respondent,** | |

## PETITION UNDER 28 USC § 2254 FOR WRIT OF
## HABEAS CORPUS BY A PERSON IN STATE CUSTODY

## THIS IS A CAPITAL CASE WITH EXECUTION SET FOR SEPTEMBER
## 21, 2023

### *I. Parties*

1. Petitioner, Anthony Castillo Sanchez, is currently under sentence of

   death at the Oklahoma State Penitentiary.  He is scheduled to be executed

   on September 21, 2023.

2. Respondent is the warden of the Oklahoma State Penitentiary. The

   warden is represented in these proceedings by the Attorney General,

   Gentner Drummond, 313 21st St, Oklahoma City, Ok 73105.

## Custody of Petitioner

3. Petitioner is being held by the state of Oklahoma under the sentence of death at the Oklahoma State Penitentiary in McAlister, Oklahoma, where the Respondent is the warden.

## *II. Jurisdiction*

4. The United States District Court has jurisdiction over this petition for a writ of habeas corpus pursuant to 28 U.S.C. §§ 2254 and 1331. Petitioner is in custody pursuant to judgment of an Oklahoma state court and seeks relief on the ground that his imprisonment and death sentence are in violation of his rights under the United States Constitution.

## III. Venue

5. Venue is proper in the United States District Court for the Western District of Oklahoma,  because Petitioner's conviction was obtained in the Cleveland County Circuit  Court in Norman, Oklahoma. *See 28 U.S.C. § 2241(d).*

## *IV. Procedural History of the case:*
### *Statement of the Facts*

6. On December 20, 1996, the body of Ms. Busken was found near Lake Stanley Draper in Cleveland County, Oklahoma. (Tr. 2053-65) There was a single gunshot wound to the back of her head. (Tr. 2190) For several

years, the offense was considered unsolved by authorities. On July 26, 2004, an Oklahoma State Bureau of Investigation criminalist documented a cold hit, connecting a person in the Combined DNA Index System database with the Busken homicide. That person was identified as Anthony Sanchez. (Tr. 2291-2304)

7. Apparently, Mr. Sanchez had not been a suspect in the Busken murder during the seven years and seven months preceding the cold hit. Further, there was no evidence that Mr. Sanchez and Ms. Busken had known each other or had even known one another. Nevertheless, on the strength of the DNA evidence, law enforcement arrested Mr. Sanchez and charged him with Capital Murder, Rape, and Forcible Sodomy.

8. Mr. Sanchez was convicted of all three counts and sentenced to death on June 6, 2006, in Cleveland County District Court (Oklahoma). Mr. Sanchez sought direct review of his convictions and sentences to the Oklahoma Court of Criminal Appeals in 2008 and 2009. He filed three state-habeas applications before filing a fourth at the end of last year. That fourth, PCD 2023 95, is the basis of this Motion and associated Petition for a Writ of Habeas Corpus.

9. Aside from one round of federal habeas following the first state-habeas litigation, this path represents Mr. Sanchez's litigation.

*Statement of the Case*

10. Anthony Castillo Sanchez, Appellant, was tried by jury and found guilty of Count 1, murder in the first degree, in violation of 21 O.S.Supp.1996, § 701.7(A); Count 2, rape in the first degree, in violation of 21 O.S.1991, § 1114(A)(3); and Count 3, forcible sodomy, in violation of 21 O.S.Supp.1992, § 888(B)(3), in Cleveland County District Court, Case No. CF-2000-325.1 The State alleged the murder involved three statutory aggravating circumstances: The murder was especially heinous, atrocious, or cruel; the murder was committed for the purpose of avoiding or preventing a lawful arrest or prosecution; and the existence of a probability that Appellant would commit criminal acts of violence that would constitute a continuing threat to society. 21 O.S.1991, § 701.12(4), (5), and (7). The jury found all three aggravating circumstances and sentenced Appellant to death for murder in the first degree, forty (40) years imprisonment and a $10,000 fine for rape in the first degree, and twenty (20) years imprisonment and a $10,000 fine for forcible sodomy. The Honorable William C. Hetherington, District Judge, presided over the trial and pronounced the judgment and sentence on June 6, 2006.  The Court of Criminal Appeals affirmed the conviction

and death sentence on the direct appeal on December 14, 2009. *Sanchez V State, 2009 OK CR 31, 223 P.3d 980. Cert Denied.*

11. Petitioner presented in his first habeas petition twelve grounds for relief. Respondent responded to the petition and petitioner has replied. Docs. 25, 31, 33, and 41. In addition to his petition, the petitioner filed motions for the appointment of an investigator, discovery, and an evidentiary hearing. Docs. 16, 24, and 32. All these motions have previously been denied. Docs. 20, 42, and 43. After a thorough review of the entire state court record (which respondent has provided), the pleadings filed in this case, and the applicable law, the district court concluded that petitioner is not entitled to habeas relief. The court further found that a certificate of appealability was not warranted.

12. The Tenth Circuit further denied a certificate of appealability. *Sanchez v. Warrior, 636 Fed. Appx. 971. , US Supreme Court certiorari denied by Sanchez v. Duckworth, 2016 U.S. LEXIS 4841 (U.S., Oct. 3, 2016)*

13. An execution date was set for September 21, 2023.

**Other Motions:**

No other motions have been filed in state or federal court other than the litigation previously mentioned on behalf of the petitioner. . Petitioner, of course, reserves the right to do so in either state court or federal court.

### *V. Grounds for Relief*

### *Ground Number One*
### *NEWLY DISCOVERED EVIDENCE ESTABLISHES AND/OR PROVIDES A REASONABLE LIKELIHOOD OF AN EVIDENTIARY HEARING ESTABLISHING THAT MR. SHANCHEZ WOULD NOT HAVE BEEN CONVICTED, AND WOULD NOT HAVE RECEIVED A DEATH SENTENCE IF ALL EVIDENCE POINTING TOWARD THE GUILTY OF THOMAS GLEN SANCHEZ , PETITIONER'S FATHER HAD BEEN KNOWN TO THE JURY*

14. Movant, Anthony Castillo Sanchez, moves, under 28 U.S.C. § 2244(b)(3)(C), for an order authorizing the filing and consideration of a first subsequent petition for a writ of habeas corpus, which is attached at Appendix 1. Mr. Sanchez's motion is grounded in the Fourteenth Amendment's Due Process Clause and the Eighth Amendment's Cruel-and-Unusual-Punishment Clause.

15. This case is an actual innocence one where Mr. Sanchez's father, Glen Sanchez, allowed Mr. Sanchez to be convicted and sentenced to death for a crime Glen[1] committed. Here, Mr. Sanchez was convicted of sodomizing, raping, and killing a local college student, Julie Buskin. During the pendency of the review of Mr. Sanchez's conviction and sentence, Glen confessed to the murder multiple times. These confessions were made to his girlfriend, Charlotte Beattie, in the context of

---

[1] This motion will refer to Glen Sanchez as "Glen" because he shares the same last name as Movant.

threatening her. Glen's confessions carry more weight because they were

made in the throes of blinding rage. And Mr. Sanchez has never

confessed to any interactions with the victim Jewell "Juli" Buskin, much

less sodomizing, raping, and killing her.

## **CONSTITUTIONAL LEGAL STANDARD**

*16.* To show "actual innocence" one must show by clear and convincing

evidence that, but for a constitutional error, no reasonable juror would

have found the petitioner eligible for the death penalty under the

applicable state law. *Sawyer v Whitley, 505 U.S. 333, in the syllabus.*

17. Justice White found in Hererra v Collins, in voting to affirm, I assume

that a persuasive showing of "actual innocence" made after trial, even

though made after the expiration of the time provided by law for the

presentation of newly discovered evidence, would render unconstitutional

the execution of petitioner in this case. To be entitled to relief, however,

petitioner would at the very least be required to show that based on

proffered newly discovered evidence and the entire record before the jury

that convicted him, "no rational trier of fact could [find] proof of guilt

beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 324, 61

L. Ed. 2d 560, 99 S. Ct. 2781 (1979)." *Herrera v Collins, 506 U.S. 390,*

*429.*

## OKLAHOMA COURT OF CRIMINAL APPEALS  STANDARD.

18. The Oklahoma Court of Criminal Appeals failed to state a constitutional

standard it was employing in denying the petition.

## OKLAHOMA COURT OF CRIMINAL APPEALS ANALYSIS

19.  The Court of Criminal Appeals found," We conclude that Glen

Sanchez's confessions, even if proven to have been made to Charlotte

Beattie, when viewed considering the evidence do not establish by clear

and convincing evidence that, but for this new information no reasonable

fact finder would have found Anthony Sanchez guilty of Juli Busken's

murder or rendered the penalty of death. "

## FIFTH DISTRICT COURT'S ANALYSIS IS UNREASONABLE

20.   Habeas relief under 28 U.S.C.S. § 2254(d)(1) is limited to cases where

there are no possibility fair minded jurists could disagree that the state

court's decision conflicts with the U.S. Supreme Court's precedents. In

determining this, a habeas court must determine what arguments or

theories supported or could have supported, the state court's decision;

and then it must ask whether it is possible fair-minded jurists could

disagree that those arguments or theories are inconsistent with the

holding in a prior decision of the Supreme Court.  Triplett v. Hudson, 2011 U.S. Dist. LEXIS 2760, in the headnotes. habeas relief is available only "where there is no possibility fair-minded jurists could disagree that the state court's decision conflicts with [the Supreme] Court's precedents." Harrington, 131 S. Ct. at 786. A federal court "may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." Williams, 529 U.S. at 411. Rather, to justify issuance of a writ, the state court's application of "clearly established" Supreme Court authority must be "objectively unreasonable." Id. at 409.

21.  Mr. Sanchez did not rape, sodomize, or murder Ms. Buskin. Instead, his father, Glen, committed the crime. In circumstances like these, prisoners must be released if they can prove that "new facts raised sufficient doubt about [the prisoner's] guilt to undermine confidence in the result of the trial . . . ." Schlup v. Delo, 513 U.S. 298, 317 (1995). In other words, a prisoner "does not meet the threshold requirement unless he persuades the [] court that, in light of the new evidence, no juror, acting reasonably, would have voted to find him

guilty beyond a reasonable doubt." McQuiggin v. Perkins, 569 U.S. 383, 386 (2013) (quoting Schlup v. Delo, 513 U.S. 298, 329 (1995)).

22.  Affirmative evidence shows Glen Sanchez and not Mr. Sanchez committed the rape and murder. First, eyewitnesses developed a composite sketch of the perpetrator shortly after the murder. That sketch does not look youthful like Mr. Sanchez, who was merely 18-years old at the time of the murder. Furthermore, the sketches look incredibly like Glen Sanchez. The inescapable conclusion is that Glen Sanchez was the murderer. Because these witnesses identified Glen Sanchez as the perpetrator, Mr. Sanchez could not have been the murderer, easily establishing Sawyer standard. And even if this Court does not determine it does so alone, the evidence establishes the standard when viewed cumulatively.

23.  Furthermore, Glen Sanchez's long-time live-in girlfriend, Charlotte Beattie, lived in terror of Glen. He beat and tortured her. Often, when Glen mistreated Ms. Beattie, he would threaten her to ensure her silence. Those threats consisted of telling her that he would kill and rape her like he did to the victim, Ms. Jewell Buskin. These confessions are simply overwhelming evidence of actual innocence. Standing alone, no reasonable juror would convict Mr. Sanchez

knowing that his father confessed to the murder. And even if this Court determines this evidence is insufficient alone, it certainly satisfies the Sawyer standard when viewed cumulatively with the other evidence in this Application.

Not only does Mr. Sanchez present overwhelming evidence that he is an innocent man, but the State also provided many holes in its case, showing that it got the wrong man. First, law enforcement collected 49 unknown fingerprints from Ms. Buskin's vehicle. This vehicle was the one in which the perpetrator transported Ms. Buskin to the murder scene. Given their placement, the inescapable conclusion is that the prints belonged to the perpetrator. And Mr. Sanchez's fingerprints did not match any of the prints – absolutely none. Second, law enforcement collected numerous hairs from incriminating places. Mr. Sanchez's hair did not match any of these hairs. Finally, law enforcement did not compare Glen Sanchez's fingerprints or hair to these critical pieces of evidence.

The DNA samples that purportedly match Mr. Sanchez do not overcome the evidence here. DNA is just another form of evidence. It is not infallible; it is not insurmountable. United States v. Bonner, 648 F.3d 209, 212 (4th Cir. 2011). See O'Laughlin v. O'Brien, 568 F.3d

287, 294-95 (1st Cir. 2009) (connection between defendant and item found at crime scene not sufficient to establish guilt alone).

24. The balance of the evidence weighs heavily in Mr. Sanchez's favor. As discussed above, the State's case against him was skimpy. The evidence not presented spoke volumes. The only persuasive evidence was a DNA match. The voluminous evidence supporting Mr. Sanchez's position greatly outweighs the DNA in this case.

25. The physical evidence that is lacking supports the claim that the DNA means that Mr. Sanchez was the murderer.  First, there are absolutely no fingerprints that match Mr. Sanchez in the car or on anything found in the car.  It seems unlikely that Mr. Sanchez kidnapped the victim, drove her to this secluded area, killed her, got back in the car, and left no fingerprints.  Second, there is hair evidence found at the crime scene that does not match Mr. Sanchez.  Third, the eyewitness does not describe Mr. Sanchez.  The state may argue the fallibility of such identification, but this eyewitness saw what he saw. Fourth, Glenn Sanchez confessed to killing the victim in this case.   A jury would look at the evidence and acquit Mr. Sanchez.

26. The evidence that was found since the trial and since the end of the habeas proceedings require that this court grant this application.  Mr.

Sanchez is innocent of the charges against him and innocent of the

crimes of capital murder.  If the courts and political figures in

Oklahoma can step in for Glossip and Jones, they certainly can step in

for Mr. Sanchez.

### *VI. Exhaustion*

24.   As a rule, state prisoners must first exhaust their available state court

remedies before seeking federal habeas corpus relief by fairly

presenting all their grounds for relief to the state courts. 28 U.S.C. §

2254(b)-(c); *Clemmons v. Sowders,* 34 F.3d 352, 354 (6th Cir.1994).

Normally, the exhaustion requirement is satisfied after the petitioner

fairly presents all his issues to the highest court in the state in which

the petitioner was convicted, thus giving the state a full and fair

opportunity to rule on them before seeking relief in federal court. *Rust*

*v. Zent,* 17 F.3d 155, 160 (6th Cir.1994).All grounds for relief raised

in this petition for a writ of habeas corpus have previously been

presented to the Ohio State Courts.

25.   Petitioner has raised this issue in his fourth post-conviction petition

raised before the Oklahoma Court of Criminal Appeals on February 3,

2023.  That court ruled on the merits and denied the same by opinion

on April 13 ,2023. Sanchez v State,

## VII. ADEPA One Year Statute of Limitations

25.     Pursuant to ADEPA, a state prisoner claiming imprisonment in

violation of the laws or Constitution of the United States has one year

from the completion of direct review of his case to file for federal

habeas relief. *See 28 U.S.C. § 2244(d) (1)*.The time period in which

the defendant seeks state post-conviction review of his conviction

tolls the statute of limitations for purposes of AEDPA.  28 U.S.C. §

2244(d)(2). This petition has been brought within the one-year statute

of limitations as required by ADEPA.

26.     Mr. Sanchez's habeas claim meets 28 U.S.C. § 2244's statute of

limitations because he could not have discovered the factual basis

until November 2022. Ms. Beattie swore that she would not share

Glen's confessions because they were part of threats toward her. Glen

made his confessions when threatening to do the same to Ms. Beattie.

Ms. Beattie literally feared for her life if she shared the confessions.

27.     28 U.S.C. § 2244 allows habeas petitioners to file later than its one-

year deadline under limited circumstances. One of those

circumstances is when "the factual predicate of the claim or claims

presented could have been discovered through the exercise of due

diligence." 28 U.S.C. § 2244(d)(1)(D). In that circumstance, the one-

year deadline starts when due diligence could have uncovered the new facts. Ibid. Here, Ms. Beattie heard Glen's confessions in the context of threatening her life. Ms. Beattie intended to carry those confessions with her to her grave. But then Glen committed suicide. Ms. Beattie informed Mr. Sanchez's spiritual advisor of Glen's confessions in November 2022. In December 2022, an investigator working for that spiritual advisor spoke with Ms. Beattie and captured Glen's confessions. This timeline places Mr. Sanchez firmly within the appliable statutory timeline. With due diligence, Mr. Sanchez could have discovered this new evidence in November 2022, giving him until November 2023 to file in this Court even without the statutory tolling while litigating state habeas corpus.

Accordingly, Mr. Sanchez's Petition meets 28 U.S.C. § 2244's statute of limitations.

### VIII.  PRAYER FOR RELIEF

WHEREFORE, the petitioner prays for:

1. Issue a writ of habeas corpus to have Petitioner brought before the court to the end that he may be discharged from his unconstitutional conviction.

2. Require Respondent to bring forward the entire record of the state court proceedings, and to specify any proceeding in the case that has been reported but not transcribed.

3. Require Respondent to file an answer admitting or denying each factual allegation herein.

4. Allow Petitioner to conduct discovery and to expand the record relating to the issues raised by this Petition.

5. Conduct a hearing at which proof may be offered concerning the allegations in this petition that Respondent does not admit.

6. Allow Petitioner sufficient time to brief the issues of law raised by this petition; and

7. Grant such other and further relief as may be appropriate.

Respectfully submitted,

**/s/ Eric Allen**

_____
ERIC J ALLEN                    (0073384)
4200 Regent, Suite 200

Columbus, Oh 43219
Tele No. 614.443.4840
Fax No. 614.445.7873

UNITED STATES COURT OF APPEALS FOR THE TENTH CIRCUIT
Byron White United States Courthouse
1823 Stout Street
Denver, Colorado 80257
(303) 844-3157
Clerk@ca10.uscourts.gov

Christopher M. Wolpert
Clerk of Court

Jane K. Castro
Chief Deputy Clerk

September 17, 2023

Eric J. Allen
Law Office of Eric J Allen
4200 Regent Street, Suite 200
Columbus, OH 43219

**RE:**      **23-6137, In re: Sanchez**
             Dist/Ag docket: 5:10-CV-01171-HE

Dear Counsel:

The court has docketed your petition for permission to file a second or successive habeas petition under 28 U.S.C. 2254. Please note the case number above. You will be notified as soon as the court takes action on this matter.

Please contact this office if you have questions.

                              Sincerely,


                              Christopher M. Wolpert
                              Clerk of Court


cc:      Jennifer L. Crabb
         Joshua Fanelli



CMW/psj